## 56441. WENTWORTH v. FIREMAN'S FUND AMERICAN INSURANCE COMPANIES.

SMITH, Judge.

We reverse the trial court's judgment, which was based on its finding that Wentworth failed to exercise "due diligence" in locating a known but missing tortfeasor. The request for service by publication pursuant to Code § 56-407.1 (d) and (e) should have been

granted. For this reason, summary judgment in favor of Fireman's Fund, Wentworth's uninsured motorist carrier, should not have been granted; moreover, Fireman's Fund's correct remedy was not a summary judgment, as its motion raised a matter in abatement.

I.

Under Code § 56-407.1 (e), a motorist or vehicle owner against whom a claim is pending, but who cannot be located, is treated as an uninsured motorist, since "whereabouts unknown" is now equal to "identity unknown"(*Norman v. Daniels,* 142 Ga. App. 456 (2a) (236 SE2d 121) (1977)) and "identity unknown" is equal to uninsured motorist" under Code § 56-407.1 (d). A trial court is authorized to order service by publication on the missing person if it is shown to the court's satisfaction that "such person resides out of the State, or has departed from the State, or cannot after due diligence be found within the State, or conceals himself to avoid the service of summons . . ." Code § 56-407.1 (e). Such service does not serve as the foundation for an in personam judgment against the tortfeasor, but it does serve as a condition precedent for recovery against the uninsured motorist carrier.

If due diligence is shown in the attempt to track down the owner or operator of the vehicle causing the injury, the request for service by publication should be granted. Due diligence "is a question of fact which addresses itself in the first instance to the discretion of the trial court." *Norman v. Daniels,* 142 Ga. App. 456, 460, supra. Under the evidence here, we conclude that a finding of due diligence was mandated; the trial court therefore abused its discretion in failing so to find.

II.

The record shows without dispute the following course of events.

A collision between the appellant's automobile and the automobile driven by Emmitt Walker occurred on September 13, 1975. The investigating officer filed a report listing Walker's address as 90 Troup Street, Apartment 812, Atlanta. On July 6, 1976, the appellant filed suit against Walker but service could not be perfected as requested at the above address. After

learning that service had not been perfected, the appellant on September 7, 1976, had a summons and complaint filed on Fireman's Fund, appellant's uninsured motorist carrier. Fireman's Fund filed a timely answer, and then, on May 6, 1977, it filed a motion to dismiss, contending that personal jurisdiction never had been obtained over Walker, without which Fireman's Fund could have no ultimate liability.

The appellant thereafter commenced the following efforts to locate Walker. On June 13, 1977, a skip tracer was retained; he reported negative results on August 11, 1977. The appellant had information that the residents of 90 Troup Street, Apt. 812, were Walker's sister and brother-in-law, Annie and Leon Cross. On August 17, 1977, the appellant had served upon them subpoenas requiring them to appear for deposition on September 15, 1977. Attempts to trace Walker through the tag number listed on the accident report proved negative. Then, on September 15, Mr. and Mrs. Cross failed to appear at the deposition, at which time they would have been asked for information to help locate Walker.

All attempts to locate Walker having failed, the appellant, on September 16, 1977, filed a Motion for Service by Publication and accompanied it with an affidavit detailing the above efforts to locate Walker. Thereafter, on October 7, 1977, the appellant asserted that the failure of Mr. and Mrs. Cross to appear for deposition had been wilful and moved for an order compelling their appearance. The motion was granted by the trial court on November 3, 1977, and on November 16, 1977, at the time designated in the trial court's order, only Mrs. Cross appeared. The information she supplied, when pursued, did not ultimately lead to locating Walker. The pursuit and failure of these further attempts to locate Walker were detailed in a supplemental affidavit in support of the motion for service by publication.

Coincidentally with the sequence of events outlined above, Walker's liability insurer, Standard Guaranty Insurance Company, learned of the appellant's suit against Walker. On three occasions between September 23, 1976, and February 23, 1977, Standard Guaranty mailed correspondence to Walker at 808 Troup Street,

Apartment 96, Atlanta. As an apparent indication that Standard Guaranty was in possession of Walker's correct address, all three letters were accepted; two return receipts were signed by Emmitt Walker, one by Louise Wilson.

The trial court, upon consideration of the above evidence, granted a summary judgment in favor of Fireman's Fund. It cited two reasons why it concluded that the appellant had not used due diligence in an effort to locate Walker: (1) The appellant did not try to locate Walker by enlisting the cooperation of Walker's liability insurance carrier, Standard Guaranty; and (2) the appellant waited over one year after filing suit before hiring a skip tracer.

### III.

We find within the whole of the evidence in the record a compelling showing that the appellant had used due diligence to locate Walker. Further we find specifically that the two reasons advanced by the trial court are insufficient to overcome the primary showing of due diligence.

(a) *Failure to use Standard Guaranty as a resource.* The trial court concluded "that the plaintiff [appellant] did not try to locate defendant Walker through Standard Guaranty when such effort would have been successful ..." The first half of this statement is uncontradicted; the second half is unsupported. There is *no* evidence in the record tending to show that Standard Guaranty would have supplied the address or would have cooperated in any way. The only evidence was an affidavit from a claims manager for Standard Guaranty who said only that correspondence had been mailed to their insured, Walker, at a particular address and had apparently been received there by Walker, as evidenced by Walker's signature on two return receipts. This affiant did not propose that the address had been available or would have been readily made available to the appellant.

It would be sharply contrary to an insurer's pecuniary interest to assist the plaintiff in obtaining a judgment against its own insured, for which judgment the insurer might ultimately be liable. If it be a fact that Standard Guaranty would have assisted the appellant in

locating Walker, the existence of such a propitious demeanor must be proved; it will not be presumed or judicially noticed. Absent some proof that a tortfeasor's liability insurer can be expected to be a fruitful source of information for locating the tortfeasor, a failure to use the insurer as a source cannot be termed an absence of due diligence. "To constitute due diligence does not require unusual efforts or expenditures, but only such constancy in the pursuit of the undertaking as is usual with those in like enterprises." Highland Ditch Co. v. Mumford, 5 Colo. 325, 336 (1880).

(b) *Failure promptly to hire skip tracer.* The trial court noted that the appellant had waited "over a year" after filing suit before hiring a skip tracer. This is minimally incorrect: the actual lapse was something less than a year, and, more importantly, the lapse between the date appellant learned service had not been perfected and the date of hiring the skip tracer was about nine months. Most significantly, however, the date the skip tracer was hired was still within the two-year statute of limitation for filing suit. The appellant had no duty to commence any legal pursuit within this period. The implication of the trial court's reasoning is that by filing suit in July, 1976, and by failing to hire a professional sleuth until July, 1977, the appellant had somehow let Walker slip away, especially since the times at which Standard Guaranty apparently contacted Walker were between these two dates.

If it is presumed that Walker disappeared for reasons independent of this lawsuit, then the appellant cannot possibly be held responsible for any delay in hiring a skip tracer, since the appellant was not required even to file suit until September, 1977, two years after the accident and two months after the skip tracer was hired.

If, on the other hand, it is presumed that Walker disappeared because the appellant had filed suit against him, then the due diligence question does not even arise. Under Code § 56-407.1(e), the motion for service by publication must be granted, without regard to any questions of due diligence, if it is shown that the alleged tortfeasor has concealed "himself to avoid the service of summons."

## IV.

In addition to the above reasons for reversing the judgment, the judgment is also incorrect insofar as it was styled as the grant of a summary judgment, rather than as the grant of a motion to dismiss. Fireman's fund filed a motion to dismiss for the reason that Walker had not been served. When the appellant thereafter filed a motion to serve Walker by publication, Fireman's Fund opposed it. The procedural efforts of Fireman's Fund were calculated to prevent the appellant from gaining jurisdiction over Walker, which would prevent any judgment against Walker, which would prevent any recovery from Fireman's Fund. Since jurisdiction over Walker is an absolute condition precedent to recovery against Fireman's Fund, Fireman's Fund, by contesting the fact of jurisdiction over Walker, is essentially questioning the court's jurisdiction to enter judgment against Fireman's Fund. By any definition, Fireman's Fund is raising a matter in abatement. The summary judgment statute, CPA § 56, "contemplates a judgment on the merits, and cannot be properly utilized to raise matter in abatement." 6 Moore's Federal Practice p. 56-639, § 56.15[8]. See especially *Ogden Equipment Co. v. Talmadge Farms*, 232 Ga. 614, 615 (208 SE2d 459) (1974).

The dictum in *Norman v. Daniels*, 142 Ga. App. 456, 460, supra, suggesting that the motion for summary judgment is "[o]ne appropriate way" for the insurer to contest a motion for service by publication, is hereby disapproved.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

ARGUED SEPTEMBER 12, 1978 — DECIDED OCTOBER 16, 1978 — REHEARING DENIED NOVEMBER 2, 1978.

*Nickerson & Gaulden, James C. Gaulden, Jr., Robert Dana Brooks,* for appellant.
*John F. Davis, Jr.,* for appellee.