36452. BRANTLEY COMPANY et al. v. BRISCOE et al.

CLARKE, Justice.

We are called upon to decide whether a covenant not to sue executed by a party to an earlier suit bars a subsequent action when neither the parties nor the subject matter is the same. We conclude that it does not and that the granting of a directed verdict must be reversed.

The facts leading up to the formation of this issue are far more complex than the issue itself. However, an outline of the facts is essential to the determination of the case. The cast of characters includes the following: C. Nevin Briscoe was president of The Brantley Company and its subsidiaries, the Wayne Trading Company, the Pierce Trading Company, the Blackshear Bank and the Blackshear Manufacturing Company. Keith Strickland was an employee of The Brantley Company and worked under Nevin Briscoe. J. E. Briscoe is the brother of Nevin Briscoe and apparently had no relationship to any of the corporations involved in this litigation. The roster of corporations is as follows: The Brantley Company is an old corporation providing numerous services in its locale, either through itself or its subsidiary or related corporations. Wayne Trading Company was formerly a wholly owned subsidiary of

The Brantley Company. Morningside Farms, Inc. was formed in 1971.

The Brantley Company alleged that Nevin Briscoe used his position as president of The Brantley Company to defraud its stockholders for the benefit of Morningside Farms.

The sequence of events is as follows: Wayne Trading Company owned four parcels of real estate and acting through its president Nevin Briscoe conveyed by security deed a security interest to the parcels to Morningside Farms, Inc. Morningside Farms later exercised its right to sell under power granted in the security deed and caused a public sale to be conducted at which it bought in the four parcels. Three days later (April 3, 1975), Morningside conveyed one of the parcels (a warehouse, sometimes referred to as an office building) to Keith Strickland for a consideration of $35,000. Strickland paid $20,000 to Morningside and gave Morningside a promissory note and security deed evidencing and securing the balance of $15,000. On May 3, 1975, Morningside assigned the note and security deed to Nevin Briscoe who assigned it to his brother J. E. Briscoe on March 7, 1977.

In the meantime, on March 3, 1976 (prior to the assignment to J. E. Briscoe), certain shareholders of The Brantley Company filed suit against Nevin Briscoe, Morningside Farms and the individual shareholders of Morningside Farms. The plaintiffs alleged civil deceit, fraud and conspiracy and sought to recover the three properties not conveyed to Strickland (a feed mill, a pig farm, and a parcel containing six environmental chicken houses). In November, 1976, a settlement was reached. Under the settlement, Nevin Briscoe, Morningside Farms and its individual shareholders executed a general release in favor of The Brantley Company. The chicken houses, feed mill and pig farm were conveyed to The Brantley Company, and in consideration, The Brantley Company executed a covenant not to sue in favor of Briscoe, Morningside Farms and its individual shareholders. After the settlement was effected and in a separate transaction, Keith Strickland, who was not a party to the original suit, executed and delivered to The Brantley Company a quitclaim deed to the warehouse property.

At this point, it should be noted that the warehouse property was not part of the subject matter of the original lawsuit and that neither J. E. Briscoe nor Keith Strickland was a party to the original lawsuit or the settlement following it.

On August 11, 1977, J. E. Briscoe instituted foreclosure proceedings on the warehouse property. It was in response to these proceedings that on September 1, 1977, Strickland and The Brantley Company brought the present action in equity praying for a

cancellation of the note and security deed and that the sale under power granted in the security deed be enjoined. An interlocutory injunction was granted. The defendants asserted as defenses res judicata, accord and satisfaction and estoppel. The case came to trial, and a mistrial resulted from the jury's inability to reach a verdict. At a second trial, the judge directed a verdict in favor of the defendants on the ground that the covenant not to sue executed by The Brantley Company in settlement of the original litigation constituted an accord and satisfaction on the issues pending before the court.

Two basic questions are involved in this case. Does a covenant not to sue protect a party not named in it (J. E. Briscoe)? Does a covenant not to sue bar an action involving a transaction and property not described in it (the warehouse property)?

1. Appellees point out that the covenant protected Nevin Briscoe and Morningside Farms, Inc. and that J. E. Briscoe was the assignee of Nevin Briscoe and successor in title to Morningside Farms, Inc. Appellees argue that these facts establish him as their privy. In effect, they are asserting that the assignment of the note and security deed carried with it an assignment of Nevin Briscoe's rights under the covenant not to sue. We cannot agree.

A covenant not to sue does not extinguish a cause of action. It merely bars the holder of the cause of action from asserting it against the party or parties with whom he has covenanted. *Otis v. Wren Mobile Homes,* 111 Ga. App. 649 (143 SE2d 8) (1965). A covenant not to sue creates a personal right in the form of protection against suit. In essence, a covenant not to sue creates a defense to suit. As such, it is not assignable. The covenant in this case is restrictive in its terms. It not only expressly names the covenantees, it positively reserves the right to proceed against "any other party not named in this covenant." This is a clear expression of intent and must be recognized to mean what it says. "The meaning and effect of a will, a contract or a pleading is to be ascertained and determined by the language employed in its preparation." *McIntyre v. Zac-Lac Paint &c. Corp.,* 107 Ga. App. 807, 808 (131 SE2d 640) (1963). See generally Code Ann. § 20-704. Therefore, J. E. Briscoe enjoys no rights or protection under the covenant not to sue.

2. Having found that J. E. Briscoe is not a party to the covenant not to sue, we are still faced with the effect of the covenant as to Nevin Briscoe and Morningside Farms, Inc. Therefore, it is necessary now to move to the question of whether the subject matter of the present litigation is affected by the covenant not to sue. The covenant makes no reference to the real estate involved in the present action nor does it make any reference to the note and security deed sought to be cancelled. There are references, however, to certain other parcels of

land and indebtedness which are specifically protected from suit by the covenant. The covenant also confers upon the covenantees protection from suits for "... damages, costs or expenses by reason or in consequence of, or in any way growing out of the business relations conducted between the parties from 1971 until the date of the execution of this instrument ..." The transaction complained of here occurred within the time frame specified in the covenant not to sue. So the remaining question is whether it grew out of the business relations conducted between the parties. The allegations in the complaint are to the effect that Nevin Briscoe and Morningside Farms, through deceit and fraud, conveyed the subject property to Strickland and, by conspiracy, secured a security deed and note from Strickland. Strickland is a plaintiff in the present litigation, but he was not a party to the covenant not to sue. J. E. Briscoe, the present holder of the note and security deed, is a defendant in the present litigation, but he was not a party to the covenant not to sue. Strickland lost no rights under the covenant and J. E. Briscoe gained no rights from it. The transaction complained of is a conveyance to an individual who is not a party to the covenant not to sue and the taking of a note and security deed from an individual who is not a party to the covenant. The note and security deed are now held by an individual who is not a party to the covenant not to sue. The covenant protects claims arising out of the business relations *conducted* between parties. The transaction complained of here was *conducted* between Nevin Briscoe, Morningside Farms, Inc. and Keith Strickland. Brantley was in no way involved in the *conduct* of this transaction. The transaction therefore falls outside the protective umbrella of the covenant not to sue.

For the reasons stated, we hold the trial court erred in directing a verdict for the defendants.

*Judgment reversed. All the Justices concur.*

ARGUED JULY 9, 1980 — DECIDED SEPTEMBER 9, 1980.

*Martin Kent,* for appellants.
*Leon A. Wilson, II, Francis Houston,* for appellees.