## 64752, 64753. VANN v. WILLIAMS (two cases).

POPE, Judge.

The Vanns, husband and wife and plaintiffs herein, each filed a complaint against defendant Williams stemming from an automobile collision — Mrs. Vann for pain and suffering and Mr. Vann for loss of consortium. Among other defenses defendant Williams pleaded accord and satisfaction. He moved for and was granted summary judgment on the ground that the Vanns had executed a release which had been stamped on the back of a draft drawn on State Farm Mutual Automobile Insurance Company. The Vanns bring these appeals contending that summary judgment was improper.

In his motion for summary judgment the burden was on defendant to affirmatively negative plaintiffs' claims and show that they were not entitled to recover under any theory of the case by evidence which demands a finding to that effect. *First of Ga. Ins. Co. v. Josey,* 129 Ga. App. 14 (3a) (198 SE2d 381) (1973). Also, the evidence of record must be construed against defendant, as the movant for summary judgment, and in favor of plaintiffs, as the parties opposing the motion. *State Farm &c. Ins. Co. v. Tucker,* 130 Ga. App. 187 (202 SE2d 551) (1973). Under these precepts the record discloses the following evidence:

State Farm insured both the plaintiffs and the defendant. Bobby Patterson, a State Farm claim specialist (adjuster), offered Mrs. Vann a settlement on the car in the amount of $400.00 if plaintiffs kept the salvage, or $450.00 if the car was surrendered to State Farm. Mrs. Vann testified that she only talked with Patterson regarding property damage to the car, that she only talked with him one time, and that she did not talk with him regarding any personal injury claim.

After discussing the settlement proposal with her husband, Mrs. Vann picked up a draft in the amount of $400.00 at the State Farm agency where she did business. The draft had been left there by Patterson. On the back of the draft was stamped the following: "RELEASE The undersigned payee accepts the amount of this payment in full settlement of all claims for damages to property and for bodily injury, whether known or unknown, which payee claims against any insured under the policy shown on the face hereof, or their respective successors in interest, arising out of an accident which occurred on or about the date shown. This release reserves all rights of the parties released to pursue their legal remedies, if any, against such payee." Mrs. Vann testified that, after she read the foregoing language, she informed the secretary at the agency who had given her the draft that "if this is a release on me, I don't want it." The

secretary, Kathy Chapman, assured her that "that's just our standard check, just to pay for the damages to your car." Mr. Vann testified that he called the agency a short time later and was also assured by Chapman that the draft "was just for the car." Chapman described her duties at the State Farm agency as secretary, office manager, customer service and other duties of that nature. She did not settle claims, but she did take reports of claims and explain insurance coverage to those who inquired.

The draft was encoded "Coverage 200:1" on its face. Patterson explained that "200" indicated property damage and "1" indicated final payment; "100" would indicate personal or bodily injury. He testified, however, that in a case such as this, where the draft was meant to include a settlement of all claims, it was not an unusual procedure to so encode a draft so as to avoid opening and closing a personal injury claim. He also testified that it was standard procedure for State Farm when settling personal injury claims to have the release executed "individually and as husband and wife." This procedure was not followed in this case. Also, although Patterson had authority to settle all claims, he worked out of a State Farm office which was considered a "property unit" and was supervised by a "property claim supervisor."

Approximately four weeks after plaintiffs had negotiated the draft, another State Farm claim specialist, Don Wilson, contacted Mrs. Vann. They talked on several occasions and Wilson offered her $700.00 to settle her personal injury claim arising out of the collision with defendant. When she rejected this offer of settlement, Wilson explained that State Farm was not required to pay anything because she and her husband had already signed a release, but if she would take the $700.00, he would still offer it. She again rejected the offer. Thereafter, she telephoned Chapman who "told me she knew she had screwed me up and was sorry she had screwed me up."

Plaintiffs attack the release on essentially three grounds: (1) fraud, (2) failure to comply with Code Ann. § 56-408.1 (now OCGA § 33-7-12), and (3) lack of intent by the parties to settle *all* of plaintiffs' claims against defendant. Because we find a genuine issue of material fact regarding the intent of the parties as to the scope of the release, we do not reach the merits of plaintiffs' other grounds.

Did the parties intend to settle *all* of plaintiffs' claims against defendant, or just the property damage claim? "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when such mistake operates as a gross injustice to one, and gives an unconscionable advantage to the other, may be relieved in equity." Code Ann. § 37-204 (now OCGA § 23-2-22). " 'Mistake . . . within the meaning of equity, . . . is an erroneous men-

tal condition, conception, or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence and resulting in some act or omission done or suffered erroneously by one or both the parties to a transaction, but without its erroneous character being intended or known at the time.'" *Callan Court Co. v. C. & S. Nat. Bank,* 184 Ga. 87, 129 (190 SE 831) (1937); Code Ann. § 37-202 (now OCGA § 23-2-21). Parol evidence can be offered to prove mistake. *Ga. Farm Bureau Mut. Ins. Co. v. Wall,* 242 Ga. 176 (249 SE2d 588) (1976); see *Southern Guaranty Ins. Co. v. Powell,* 246 Ga. 487 (271 SE2d 831) (1980). The evidence of record, viewed in a light most favorable to plaintiffs, does not demand a finding that plaintiffs' personal injury claims have been precluded because of the release they signed, the parties being mistaken as to the legal effect thereof. See *White & Hamilton Lumber Co. v. Foster,* 157 Ga. 493, 502-3 (122 SE 29) (1924); *Seals, Armour & Co. v. Stocks,* 100 Ga. 10 (30 SE 278) (1896). See also *Aetna Cas. &c. Co. v. Horton,* 232 Ga. 355 (2) (206 SE2d 487) (1974). Accordingly, summary judgment was inappropriate in these cases.

*Judgments reversed. Deen, P. J., and Sognier, J., concur.*

DECIDED JANUARY 27, 1983 —
REHEARING DENIED FEBRUARY 17, 1983 — 

*William D. Sparks,* for appellants.
*David H. Tisinger,* for appellee.