76939. CHITWOOD et al. v. SOUTHERN GENERAL
INSURANCE COMPANY.
(377 SE2d 210)

CARLEY, Judge.

While driving an automobile owned by her husband, appellant Harold Chitwood, appellant Mrs. Fern Chitwood was involved in a traffic incident with an uninsured motorist, Gregory Scott Kelly. Appellants filed suit against Kelly in Fulton County to recover for damages received in the incident and they secured a default judgment. Appellants then brought suit against appellee, as their uninsured motorist insurance carrier, for recovery of the amount of the judgment entered against Kelly. On cross-motions for summary judgment, the trial court denied appellants' motion and granted appellee's motion based upon its finding that "proper service was never obtained on the alleged uninsured motorist in the underlying action."

1. The issue to be resolved is whether appellee can defend against appellants' claim for uninsured motorist benefits by *collaterally* attacking their underlying judgment against the alleged uninsured motorist or whether appellee's attack on appellants' underlying judgment can only be made by the filing of a motion to set aside in the court of rendition. OCGA § 9-11-60 (a) provides that "[a] judgment *void on its face* may be attacked in any court by any person. *In all other instances,* judgments shall be subject to attack only by a direct proceeding brought for that purpose in one of the methods prescribed in this Code section." (Emphasis supplied.) Accordingly, unless appellants' underlying judgment against the uninsured motorist was shown to be "void on its face," OCGA § 9-11-60 (a) would statutorily preclude appellee from defending this action by advancement

of a collateral attack upon the validity of that judgment. See generally *Logan v. Nunnelly*, 128 Ga. App. 43 (195 SE2d 659) (1973).

The return of service of the complaint in appellants' action against the uninsured motorist clearly shows, on its face, compliance with OCGA § 9-11-4 (d) (7) "by leaving copies thereof at [the uninsured motorist's] dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. . . ." See generally *Adams v. C & S Nat. Bank*, 132 Ga. App. 622, 623 (2) (208 SE2d 628) (1974). This "return of service in [the underlying] case constitutes a prima facie showing that personal service was accomplished on the [uninsured motorist]." *Harvey v. Harvey*, 147 Ga. App. 154 (1) (248 SE2d 214) (1978). Compare *Barnes v. Continental Ins. Co.*, 231 Ga. 246 (201 SE2d 150) (1973); *McGhee v. Kroger Co.*, 150 Ga. App. 291 (1) (257 SE2d 361) (1979). Accordingly, appellants' underlying judgment against the uninsured motorist is *not* "void on its face" for insufficient service. "[T]he invalidity of . . . a judgment does not appear on the face of the record where a proper entry of service, complete and regular on its face, is made on the original process filed in the office of the clerk. The establishment of its invalidity, therefore, becomes a question of fact . . . and until this is done, such a judgment is not void. . . ." *Jennings v. Davis*, 92 Ga. App. 265 (1b) (88 SE2d 544) (1955). Thus, in order to show the insufficiency of service of process and the consequent invalidity of the underlying judgment, appellee was necessarily required to rely upon evidence which was totally dehors the face of the record. Although appellee would be entitled to make such an evidentiary showing in the context of a *direct* proceeding brought for the express purpose of attacking the validity of the judgment, appellee could not, in the context of this action, rely upon such extraneous evidence as support for its *collateral* attack upon the judgment. OCGA § 9-11-60 (a).

The provisions of the Uninsured Motorist Act in no way alter this result. That Act requires that, as a condition precedent to initiation of a suit against the uninsured motorist carrier, the insured first pursues an action against the uninsured motorist to judgment. *If* that judgment is void on its face for insufficient service, it is subject to collateral attack by the uninsured motorist carrier. *If*, however, the underlying judgment shows on its fact that service was perfected, whether by personal service on the uninsured motorist or by authorized publication, it is not subject to collateral attack for insufficient service. The Uninsured Motorist Act is not an exception to the provisions of OCGA § 9-11-60. There is absolutely nothing within the terms of the Act to evince a legislative intent that a judgment, otherwise valid on its face, is not to be afforded the statutory protection against collateral attack simply because that judgment was obtained in an action against an uninsured motorist. Confining a review of the

record to evidence which is *admissible and probative* shows that appellants filed suit against the uninsured motorist and obtained against him a default judgment which was not "void on its face" for insufficient service. Appellee was served with a copy of appellants' complaint in that action and was authorized to file, in the name of the uninsured motorist, an answer which raised the insufficiency of service defense. Although appellee was certainly not required to file such an answer, it must abide by the legal consequences of its election not to do so. Included among those consequences is that appellee is statutorily precluded from relying upon insufficient service as the basis for its *collateral* attack upon the judgment. Accordingly, an unauthorized collateral attack upon appellants' underlying judgment against the uninsured motorist could not provide the proper basis for a grant of summary judgment for appellee.

2. However, a judgment of the trial court will be affirmed if it is right for any reason. The evidence shows that, within several weeks of the collision, appellants accepted a sum of money from appellee with regard to property damage to the insured vehicle. In connection with this payment, appellant Harold Chitwood executed a loan receipt which contained the following provision: "In consideration of the making of the loan under the terms and conditions stated, [appellant Mr. Chitwood] hereby agrees with [appellee] that [he] will neither make *any claims* nor institute *any proceeding* at law or in equity against [appellee] for recovering therefrom *with respect* to the aforesaid loss or damage" to the insured vehicle. (Emphasis supplied.) Thus, in consideration of the payment of a stated sum, appellee obtained a covenant that it would not thereafter be sued "with respect" to property damage to the insured vehicle. A covenant not to sue "bars the holder of the cause of action from asserting it against the party or parties with whom he has covenanted. [Cit.] A covenant not to sue creates a personal right in the form of protection against suit. In essence, a covenant not to sue creates a defense to suit." *Brantley Co. v. Briscoe*, 246 Ga. 310, 312 (1) (271 SE2d 356) (1980). By its terms, the covenant not to sue appellee "with respect" to the property damage to the insured vehicle extends to "any proceeding." Thus, the covenant, if not otherwise shown to be unenforceable, would provide appellee with a viable defense to any subsequent suit brought "with respect" to such property damage, regardless of whether such suit was instituted pursuant to appellants' collision coverage under the policy or pursuant to appellants' uninsured motorist coverage thereunder. See generally *James v. Tarpley*, 209 Ga. 421, 423 (1) (73 SE2d 188) (1952). Compare *Harden v. Clarke*, 123 Ga. App. 142 (179 SE2d 667) (1971).

In opposition to this clear and unambiguous covenant not to sue, appellants offered only the bald assertion that, "at the time" the cov-

enant had been executed, appellant Chitwood "was advised by [appellee's] representative that [he] would be allowed to supplemental payments for later and other discovered damages." " 'Where parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or statements is inadmissible to add to, take from, or vary the written instrument.' [Cit.] 'Even assuming . . . [appellee's representative] . . . misrepresented the purpose or extent of the [covenant not to sue], the record in this case does not disclose any artifice, trick, or fraud perpetrated upon appellant[s] to prevent . . . [them] . . . from reading [it]. [Cits.]' [Cits.]" *Yeager v. Poole Truck Lines*, 162 Ga. App. 803 (2) (293 SE2d 64) (1982). "[T]he only fraud which would relieve a party from an obligation which he has signed, where that party can read and write and is not otherwise under any disability, is that fraud which prevents him from reading what he signed. [Cits.]" *Wall v. Fed. Land Bank of Columbia*, 156 Ga. App. 368, 372 (2) (274 SE2d 753) (1980). Accordingly, appellants' parol evidence regarding the alleged misrepresentations of appellee's agent would not be admissible and probative of fraud and, thus, would not create a genuine issue of material fact as to the enforceability of the covenant not to sue.

Parol evidence "is admissible to demonstrate that *both parties to a release were honestly mistaken as to the legal effect of the instrument*, and may establish a question of fact over the scope of the release which is most appropriate for jury resolution. [Cit.]" (Emphasis supplied.) *Robertson v. Henderson Chem. Co.*, 171 Ga. App. 722, 724 (3) (320 SE2d 835) (1984). See also *Fulghum v. Kelly*, 255 Ga. 652 (340 SE2d 589) (1986); *Vann v. Williams*, 165 Ga. App. 457 (299 SE2d 908) (1983). The evidence shows, however, that appellee, after engaging in negotiations as to its contractual liability for property damage to the vehicle, obtained a clear and unambiguous covenant that it would not be sued "with respect" to that single element of damage. Under the circumstances in which it was obtained and by its express terms, the covenant not to sue cannot be construed as having any legal effect other than to provide *appellee* with a personal defense to any subsequent suit brought by appellants to recover for such *property* damage. Compare *Fulghum v. Kelly*, supra (general release obtained after negotiations with only one joint tortfeasor); *Roberson v. Henderson Chem. Co.*, supra (general release obtained after negotiations only as to property damage); *Vann v. Williams*, supra (general release obtained after negotiations only as to property damage). Since the covenant not to sue could *only* have that legal effect, its execution could not signify the parties' intent that it have any *other* legal conse-

quence. The parties either intended that the covenant not to sue would provide appellee with a defense to a subsequent suit for property damage, or its execution had no legal effect whatsoever. Compare *Fulghum v. Kelly*, supra (parties, although intending to contract, possibly mistaken as to unintended legal effect that execution of general release would have upon joint tortfeasors not parties thereto); *Roberson v. Henderson Chem. Co.*, supra (parties, although intending to contract, possibly mistaken as to unintended legal effect that execution of general release, after negotiations only as to property damage, would have upon right to sue for personal injuries); *Vann v. Williams*, supra (parties, although intending to contract, possibly mistaken as to unintended legal effect that execution of general release, after negotiations only as to property damage, would have upon right to sue for personal injuries). Thus, appellants do not seek a reformation of the covenant not to sue so as to avoid a mutually unintended legal consequence of its execution. Instead, appellants urge a total cancellation of the covenant so as to avoid their unilateral mistake in relying upon an alleged misrepresentation as to its intended legal effect. Compare *Fulghum v. Kelly*, supra (reformation of general release into covenant not to sue sought); *Roberson v. Henderson Chem. Co.*, supra (reformation of general release into release only as to property damage sought); *Vann v. Williams*, supra (reformation of general release into release only as to property damage sought). However, the parol evidence rule will not allow a total evasion of the legal consequences of executing a document by one who merely alleges that the legal effect of his execution of that document was misrepresented to him. "Where one who can read signs a contract without apprising himself of its contents, otherwise than by accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defend an action based on it, or have it *canceled or reformed*, on the ground that it does not contain the contract actually made, unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the opposite party, amounting to actual fraud such as would reasonably prevent him from reading it. [Cits.]" (Emphasis supplied.) *Morrison v. Roberts*, 195 Ga. 45 (1) (23 SE2d 164) (1942).

The evidence shows that appellee paid a sum of money for property damage to the vehicle and received, in return, a covenant that it would not be sued "with respect" to such property damage. Although appellants allege that the legal effect of this covenant was misrepresented by appellee's agent, no legal excuse for relying upon his misrepresentation was adduced and there was no fiduciary or confidential relation between appellee and appellants. See *Walsh v. Campbell*, 130

Ga. App. 194 (202 SE2d 657) (1973). Under these circumstances, no genuine issue of material fact remains as to the enforceability of the covenant not to sue. The trial court correctly granted summary judgment in favor of appellee based upon the accord and satisfaction defense and, therefore, correctly denied appellants' motion for summary judgment.

*Judgment affirmed. McMurray, P. J., Pope, Benham, and Beasley, JJ., concur. Birdsong, C. J., Deen, P. J., Banke, P. J., and Sognier, J., concur specially.*

SOGNIER, Judge, concurring specially.

I concur specially with the majority because, in contrast with the majority's holding in Division 1, I find that the trial court correctly granted judgment in Southern General's favor on the basis that proper service was never obtained on the uninsured motorist, Gregory Scott Kelly, in the underlying action.

The record reveals that in their suit against Kelly, the Chitwoods had a copy of the action served on Southern General pursuant to OCGA § 33-7-11 (e) and sought to serve Kelly on July 30, 1986, by having the marshal leave a copy thereof with a woman at Kelly's notorious place of abode. At the time service was notoriously made, the Chitwoods' attorney wrote a letter to Southern General informing it that there were problems with the service on Kelly, noting that the woman on whom service was made had stated that Kelly had been gone over a year. The record contains an affidavit submitted by Southern General from the woman residing at the address named in the return of service, in which she stated that Kelly had not lived there since June 1985, and that to the best of her knowledge, Kelly had lived outside of Georgia since June 1985 and never received any of the legal papers left for him at her address. Although the letter to Southern General shows that the Chitwoods knew service on Kelly was inadequate, the Chitwoods did not initiate service by publication on Kelly as set forth in OCGA § 33-7-11 (e). Southern General filed no answer in that suit either on behalf of Kelly or on its own behalf. The suit against Kelly subsequently went into default; the Chitwoods then instituted the instant suit against Southern General.

The Uninsured Motorist Act, OCGA § 33-7-11, provides that all policies issued or delivered in this state must contain a provision rendering the insurer liable to pay the insured "all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." OCGA § 33-7-11 (a) (1). This language created a "condition precedent" requiring an insured, before instituting suit against his uninsured motorist carrier, to first sue and recover a judgment against the uninsured motorist tortfeasor. *Wallis v. Cotton States Mut. Ins. Co.*, 182 Ga. App. 147, 148 (354 SE2d 842)

(1987); *Norman v. Daniels*, 142 Ga. App. 456, 459-460 (2) (a) (236 SE2d 121) (1977). As the language in the Uninsured Motorist Act indicates, the Act is primarily directed to situations where the uninsured motorist tortfeasor is unknown or, as is the case here, where the tortfeasor is known but cannot be located because he resides out of the state, has departed the state, cannot be found within the state, or has wilfully concealed himself to avoid service. OCGA § 33-7-11 (e). Despite the unavailability of the known tortfeasor, the insured cannot proceed directly against the insurer but instead, in order to pursue his claim against his own insurer, must obtain a nominal judgment either by a John Doe proceeding or by means of service by publication, so as to fulfill the statutory condition precedent. As the courts have acknowledged and indeed stressed in the service by publication cases, such a judgment provides absolutely no foundation for an in personam judgment against the tortfeasor: the sole purpose of the "judgment" is to fulfill the condition precedent in OCGA § 33-7-11. *Wentworth v. Fireman's Fund &c. Co.*, 147 Ga. App. 854, 855 (I) (250 SE2d 543) (1978); *Norman*, supra at 460 (2) (b and c).

In this case, the Chitwoods do not assert that they obtained a valid in personam judgment against Kelly. Nor do the Chitwoods claim they followed OCGA § 33-7-11 (e) and obtained a "judgment" by means of service by publication before they instituted suit against Southern General. Their appeal is based on the argument that Southern General waived all objections to the validity of the personal service on Kelly, an argument I find meritless, as addressed below. In turn, Southern General does not challenge Kelly's tort liability nor does it seek to set aside the earlier judgment. Rather, Southern General claims it is not liable under the policy to the Chitwoods because they uncontrovertedly failed to satisfy the requirements of OCGA § 33-7-11. The propriety of the personal service on Kelly and the absence of service by publication were not raised in order to attack the underlying judgment, but to show that the condition precedent to Southern General's liability "to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle," OCGA § 33-7-11 (a) (1), had not been met. Southern General has not collaterally attacked the Chitwoods' judgment against Kelly: It has merely demonstrated the absence of any questions of fact that the Chitwoods did not follow the procedure necessary under OCGA § 33-7-11 to obtain the type of "judgment" required as a condition precedent to suit against Southern General. Thus, the question whether the underlying judgment could be collaterally attacked is not relevant: the only issue here is whether the Chitwoods complied with the Uninsured Motorist Act.

The majority holds that because the judgment against Kelly was not void on its face, Southern General will have to return to the court

rendering the judgment, OCGA § 9-11-60 (b), and move to have it set aside pursuant to OCGA § 9-11-60 (d), because the Uninsured Motorist Act "is not an exception to the provisions of OCGA § 9-11-60." This reasoning misses the mark. It would be untenable to suggest that had the Chitwoods obtained a judgment against Kelly by means of service by publication, Southern General could have avoided its liability as the Chitwoods' uninsured motorist carrier by attacking the underlying judgment for its lack of in personam jurisdiction by a motion pursuant to OCGA § 9-11-60, even though the courts have repeatedly stressed such a "judgment" is not valid, *Wentworth* and *Norman*, supra, and OCGA § 9-11-60 authorizes attacks on such judgments. The reason why such a suggestion is untenable is that, notwithstanding the apparent "exception" to OCGA § 9-11-60 created by OCGA § 33-7-11 (e), the validity of the underlying judgment is not an issue: only the judgment's status as the qualifying "condition precedent" is in issue, so that the judgment's defects are irrelevant *in the sole context of an action under OCGA § 33-7-11.* Thus, OCGA § 33-7-11 (e) is not an "exception" to OCGA § 9-11-60: despite the fact that a collateral attack on a judgment happens to share several characteristics in common with an uninsured motorist carrier's procedural defense based on the insufficiency of an insured's compliance with OCGA § 33-7-11, the purposes for which the two statutes were enacted simply do not overlap here. Since the General Assembly has statutorily rejected a collateral attack by an uninsured motorist carrier on a judgment obtained in compliance with OCGA § 33-7-11, so that an insurer cannot use OCGA § 9-11-60 to attack a judicially-acknowledged invalid judgment because it qualifies as a "condition precedent" under OCGA § 33-7-11, it follows that the insurer should not be required to question a judgment's uncontroverted *failure* to qualify as a "condition precedent" under OCGA § 33-7-11 solely by means of OCGA § 9-11-60.

The majority asserts that because Southern General elected not to file an answer in the Chitwoods' suit against Kelly, it must abide by the legal consequences of its decision. I cannot agree with this any more than I can agree with the Chitwoods' argument that because Southern General knew personal service as to Kelly was inadequate but failed to raise that issue in the suit against Kelly, Southern General waived its objections and could not defensively assert that issue in the case sub judice to avoid liability under the contract of insurance between the parties. OCGA § 33-7-11 (e) "accords to the insurer issuing a policy providing uninsured motorist coverage to the plaintiff *. . . the right at its election* to participate" directly or indirectly in the insured's suit against the uninsured motorist. *Home Indem. Co. v. Thomas*, 122 Ga. App. 641 (178 SE2d 297) (1970). Although once an insurer elects to participate in the suit, its actions are governed by the

applicable rules of practice and procedure, id., an insurer is not required to participate but may elect not to participate in the proceedings and not be a party defendant. See *Fisher v. Womack*, 128 Ga. App. 62, 63 (1) (195 SE2d 753) (1973); see generally *Hartford Acc. &c. Co. v. Studebaker*, 139 Ga. App. 386, 387 (1) (228 SE2d 322) (1976). Regardless of what the result of such nonaction on the insurer's right to contest the tort liability of the uninsured motorist or to assert its own defenses, see generally *Public Nat. Ins. Co. v. Wheat*, 100 Ga. App. 695, 701 (5) (112 SE2d 194) (1959); *United States Fid. &c. Co. v. Bishop*, 121 Ga. App. 75, 77 (172 SE2d 855) (1970), it is clear that responsibility for jurisdictional, procedural and other errors in the underlying suit does not rest on a non-party insurer. It follows that where a party, insurer or otherwise, is not involved in a suit, not obligated to answer the suit, and not required to respond to errors made therein, it cannot waive such errors as are made.

In the case sub judice, while Southern General had the right to participate and raise the jurisdictional issue if it so chose, see *State Farm Mut. &c. Ins. Co. v. Glover*, 113 Ga. App. 815, 820 (149 SE2d 852) (1966), the record is uncontroverted that Southern General chose *not* to exercise that right and did not participate, either directly or indirectly, in the Chitwoods' suit against Kelly. Therefore, since Southern General had no obligation to answer the suit, the adequacy or inadequacy of service on Kelly was not a matter with which the insurer had to concern itself until the moment when its insureds, the Chitwoods, instituted suit against it based on the judgment in the Kelly suit. Thus, in answer to the Chitwoods' argument, Southern General did not waive objection to the lack of service on Kelly in the underlying suit. As to the majority's assertion that Southern General's decision not to participate in the underlying suit means it must "abide by the legal consequences of its election," i.e., must now return to the court rendering that judgment and have it set aside pursuant to OCGA § 9-11-60 (d), Southern General was informed by letter regarding a suit in which it had little interest, that its insureds had experienced problems obtaining in personam jurisdiction over the uninsured motorist tortfeasor. There was no reason for Southern General to believe its insureds would not follow in this commonplace situation the standard practice of seeking an order for service by publication under subsection (e). To require Southern General to return to the court rendering the underlying judgment to correct a mistake made by the Chitwoods in a suit in which Southern General had no involvement and where the Chitwoods had a specific statutory method for handling just such a matter, which they chose to ignore, would in essence penalize the insurer for the incompetence of its insureds.

Therefore, Southern General having established by uncontro-

verted and unobjected to affidavits that the Chitwoods did not obtain any type of "judgment" required under OCGA § 33-7-11 (e) in order to subject Southern General to liability under the policy, I would affirm the trial court's order. Accordingly, I do not consider it necessary to reach the release issue addressed in Division 2 of the majority's opinion.

I am authorized to state that Chief Judge Birdsong, Presiding Judge Deen, and Presiding Judge Banke join in this special concurrence.

DECIDED DECEMBER 5, 1988 —
REHEARING DENIED DECEMBER 20, 1988 — 

*William R. Hurst*, for appellants.
*Warner S. Fox*, for appellee.