**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 24, 2013**

# In the Court of Appeals of Georgia

A13A0727. LNV CORPORATION v. STUDLE et al.

MILLER, Judge.

LNV Corporation ("LNV") sued Charles and Daniel Studle to recover amounts owed on two commercial promissory notes. After the parties engaged in settlement discussions, the Studles filed a motion to enforce a settlement agreement between the parties. The trial court granted the Studles' motion, finding that emails exchanged between the parties constituted a valid settlement offer and acceptance thereof. LNV appeals, contending that the trial court erred in (1) not admitting parol evidence concerning ambiguities in the purported offer and acceptance, and (2) granting the Studles' motion to enforce the settlement agreement. For the reasons that follow, we affirm.

We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the [C]ourt that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the Appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *Johnson v. DeKalb County*, 314 Ga. App. 790, 791 (726 SE2d 102) (2012).

So viewed, the record shows that on September 27, 2005, the Studles executed a promissory note ("Note 1") payable to FirstBank Financial Services in the principle amount of $25,288. Note 1 was renewed on November 20, 2006, and again on July 17, 2008, in the principal amount of $25,150. On June 12, 2008, Daniel Studle executed a promissory note ("Note 2") payable to FirstBank in the principal amount of $4,193.41. Both Note 1 and Note 2 (collectively the "Notes") were subsequently assigned to LNV. On August 1, 2011, LNV filed suit against the Studles to recover the principal due on the Notes, plus accrued and unpaid prejudgment interest and attorney fees.

After the Studles filed their answer and defenses, the parties entered into settlement discussions via email and by telephone. The parties' settlement discussions included telephone conversions about a down payment of accrued and unpaid interest.

On March 21, 2002, the Studles' counsel sent an email to LNV's counsel offering to settle the case for a total of $34,757.74, including a $5,000 down payment, with the remaining balance payable over 60 months at six-percent interest. The offer also requested title to a 1999 GMC truck upon payment of the initial amount. Between March 21 and April 17, 2012, the parties exchanged a series of emails discussing a continuance of the trial date in this case, the status of the Studles' March 21 settlement offer and the reduction in Charles Studle's income.

On April 17, 2012, LNV's counsel responded via email to the Studles' counsel with a counteroffer approved by LNV's loan committee, which set forth the terms under which the Notes would be modified to consolidate all current principal, charges and fees due as of April 15, 2012. LNV's April 17 email stated that the terms approved by the loan committee varied from the Studles' March 21 offer in that the loan committee proposed a 2-year term, with a 60-month amortization. The April 17 email also stated that the Studles would be required to enter into consent judgments,

3

only to be recorded in the event of default. LNV's counteroffer, however, did not mention the proposed $5,000 down payment or title to the GMC truck.

It is undisputed that on April 20, the Studles' counsel sent an email to LNV's counsel, stating that the Studles accepted LNV's offer as proposed. The April 20 email also asked LNV's counsel to draft the proposed modifications and consent judgments. The Studles' counsel received an email on May 17, 2012 with copies of the amended Notes and the modification agreement requiring the Studles to make an up-front payment of $5,949.08 in accrued interest. The Studles objected to this up-front payment, and they subsequently filed a motion to enforce a settlement agreement based on the April 17 and April 20 emails between the parties.

The trial court granted the Studles' motion to enforce the purported settlement agreement, finding that the April 17 email outlined LNV's unambiguous settlement offer as approved by its loan committee, and the April 20 email constituted the Studles' acceptance of LNV's settlement offer as proposed. The trial court also refused to consider parol evidence regarding conversations and emails that occurred prior to the formation of the settlement agreement.

1. LNV contends that the trial court erred by failing to admit parol evidence concerning ambiguities in the purported offer and acceptance. We disagree.

A settlement agreement is a contract and must meet the same requirements of formation and enforceability as other contracts. . . . Because a settlement agreement is a contract, it is subject to the usual rules of statutory construction. While the cardinal rule of construction is to determine the intention of the parties, no construction is required or permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Footnotes and punctuation omitted.) *Lamb v. Fulton-DeKalb Hosp. Auth.*, 297 Ga. App. 529, 533 (2) (677 SE2d 328) (2009). Moreover, it is well settled that parol negotiations preceding the making of a written contract are merged in the written contract, and parol evidence is inadmissible to vary or contradict the terms of a written contract which is valid on its face. See *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 647 (1) (629 SE2d 468) (2006); *Green v. Ford Motor Credit Co.*, 146 Ga. App. 531, 532 (1) (246 SE2d 721) (1978). As more fully set forth in Division 2 below, the settlement agreement based on the two emails between the parties was clear, unambiguous, and enforceable on its face. Accordingly, the trial court did not err in refusing to consider parol evidence of conversations and emails occurring prior to the formation of the settlement agreement.

2. LNV contends that the trial court erred in granting the Studles' motion to enforce the settlement agreement, because no enforceable agreement existed between the parties, and the trial court failed to view the evidence in the light most favorable to LNV.

Settlement agreements "are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits." (Footnote and punctuation omitted.) *Triple Eagle Assoc. v. PBK, Inc.*, 307 Ga. App. 17, 20 (2) (704 SE2d 189) (2010).

> In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties. The settlement agreement alleged to have been created in this case [was] the product of the attorneys for the parties. As the existence of a binding agreement is disputed, the proponent of the settlement must establish its existence in writing. The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.

(Citation and punctuation omitted). *Johnson*, supra, 314 Ga. App. at 793 (1).

Here, the settlement agreement consisted of the April 17 and April 20 emails between the parties. The April 17 email from LNV's counsel to the Studles unambiguously set forth the terms under which the Notes would be modified, as approved by LNV's loan committee. In that email, LNV's counsel specifically referred to the pending suit on the Notes, identified the Notes as set forth in LNV's complaint, and stated that the loan committee had approved the following settlement terms:

> In respect of Note 1 - LNC and Charles M. Studle and Daniel Blake Studle enter into a loan modification, *consolidation of all current principal, charges and fees* as of April 15, 2012 in the amount of $24,628.80 with interest accruing at the U.S. prime rate as published in the Wall Street Journal plus 2.75%, floor of 6%, adjusted quarterly, the term is a 2 year note based upon a sixty month amortization, with payments of $476.15 per month beginning 5/15/2012, payments adjusted quarterly. Maturity date of April 15, 2014. We also enter into a consent judgment in respect of Count 1, only to be recorded in the event of a default in repayments. (Emphasis supplied).

> In respect of Note 2 - LNV and Daniel Blake Studle enter into a loan modification, *consolidation of all current principal, charges and fees* as of April 15, 2012 in the amount of $4,258.77, with interest accruing at the U.S. prime rate as published in the Wall Street Journal plus 2.75%, floor of 6%, adjusted quarterly, the term is a 2 year note based upon a

sixty month amortization, with payments of $825.33 per month beginning 5/15/2012, payments adjusted quarterly. Maturity date of April 15, 2014. We also enter into a consent judgment in respect of Count II, only to be recorded in the event of a default in repayments. (Emphasis supplied).

The April 20 email from the Studles' counsel to LNV unequivocally stated that "[m]y clients accept the offer as you proposed."

(a) LNV argues that the April 17 email shows that there was no mutual assent to a modification of the Notes without a down payment, because the email conflicts with the parties' prior communications, and that LNV's conduct in delivering modified notes which included down payments confirms that there was no mutual understanding between the parties. We do not agree.

Where, as here, the terms of a written contract are clear and unambiguous, the trial court will look to the contract alone to find the intention of the parties, and parol evidence is without probative value to vary the terms of the written contract. See *Paige v. Jurgensen*, 204 Ga. App. 524, 525 (1) (419 SE2d 722) (1992). The April 17 email clearly and unambiguously stated that the loan committee had approved the written terms for modification of the Notes and consolidation of all current principal,

charges and fees due thereunder.[1] To the extent LNV argues that the term "varies" in its April 17 email raises an ambiguity in its counteroffer, there is no indication that this term refers to anything other than the clear and unambiguous payment and amortization schedule set forth therein. Thus, the parties' prior settlement communications regarding a down payment, and LNV's subsequent conduct in delivering modified notes which included down payments were inadmissible to vary or contradict the terms of LNV's unambiguous settlement offer.[2]

(b) LNV also argues that the trial court failed to view the evidence in the light most favorable to LNV as the nonmoving party. We discern no error.

A party seeking to enforce a settlement agreement must show that there is no evidence in the record sufficient to create a jury issue on at least one element of the movant's case. See *Johnson*, supra, 314 Ga. App. at 791. Here, the April 17 email

---

[1] Although the April 17 email constituted a counteroffer, the Studles' acceptance of the counteroffer was sufficient to create a settlement agreement. See *DeRossett Enterprises, Inc. v. GE Capital Corp.*, 275 Ga. App. 728, 729 (1) (621 SE2d 755) (2005).

[2] The decision in *City of Albany v. Freeney*, 313 Ga. App. 24, 28 (1) (720 SE2d 349) (2011) (holding that letters between attorneys do not require entry of summary judgment, and that factual issues remained with regard to the existence of a settlement between the parties), does not require a different result, because that case involved an oral settlement offer.

clearly and unambiguously set forth the terms of LNV's settlement offer as approved by its loan committee, and the Studles unequivocally accepted the settlement offer in the April 20 email from their counsel. Moreover, contrary to LNV's contention, the settlement offer shows on its face that it was not contingent on the Studles making a down payment of the interest owed to date, because the settlement agreement specifically states that the loan committee approved "consolidation of all current principal, charges and fees" for both Notes. Finally, the compromise of the parties' disputed claims provided valuable consideration for the settlement agreement. See *Byers v. McGuire Properties*, 285 Ga. 530, 535-536 (2) (679 SE2d 1) (2009). Accordingly, the trial court did not err in granting the Studles' motion to enforce the settlement agreement.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*